May it please the Court, Caroline Lobdell on behalf of Washington Farm Bureau Federation and Washington Cattlemen's Association appellants whose motion to intervene has been denied. Today I will focus on the two factors of intervention that are directly in dispute. One is practical impairment and the second is adequacy of representation. First I'll provide a background as it helps to inform the discussion and legal analysis with respect to impairment and adequacy of representation. Today's case is about whether Washington has sufficiently adopted an adequate non-point source pollution plan or program pursuant to the Clean Water Act and to the Coastal Zone Reauthorization Act. Could I stop you there because that's what I'm struggling with. Is the case that Northwest brought about whether the program is adequate? My understanding is that the case it brought is about whether the federal funding that was granted to Washington on a conditional basis contingent upon Washington developing more robust practices, that the case is really about whether the federal government should continue funding in the meantime. That's part of the case, Your Honor, but if you will look at the reality of the complaint and the response brief that plaintiffs filed on appeal, it's no secret that plaintiff is after more restrictive agricultural practices at bottom. Yeah, but are they going to get that in this suit? They might. It seems to me what they're asking in this case is they're objecting to, hey, federal government, you're not supposed to fund on this contingent basis in the meantime, and that that's the question to be resolved. And I'm wondering if I'm misunderstanding the fundamental premise of what was really before the district court in the original complaint. This program works on sort of a carrot stick approach. So the funding is, you know, part at bottom, sort of the stick that plaintiffs have used in order to attempt to basically get more restrictive agricultural practices or overall just more non-point source regulation. If plaintiffs win, if Northwest wins, what happens? According to them in their response brief, if they win, then my clients will be subject to more stringent agricultural practices. That's page 11 and 12 of their response brief. Funding would be cut off, right? The funding would be indefinitely cut off. Well, that's what they've asked for. I'll just tell you both, and I don't want to take up all your time, but for both of you, it's going to be important for me to know what was the underlying case about, because I'm struggling to see that it's going to involve a tradeoff, right, a conflict between the cattlemen and the state. That's my issue. So is it – would Your Honor like me to address the nature of the claims, the reality of the complaint, which I think is very well briefed and obvious from plaintiff's response and the nature of the complaint. For example, Claim 4, which is the Clean Water Act, Section 319. That particular claim asks this Court in claims deficiency that there are inefficient or defective implementation control, or that they even exist at all. No, I appreciate that. My problem is it seems to me that it is a monolithic question, either Washington sort of qualified or it didn't qualify, and that Washington – and I think this is the district court's view, and then I'm going to hush up and let you answer, but that the district court thought that Washington had an interest that it not only subsumed your client's interest, not only was as broad as, but it subsumes, and they have the very same goal, which is to defend the existing plan. Yes, Your Honor. The district court relied – after finding protectable interest, the district court basically said, but because the state has the same ultimate objective, that the inadequacy of representation is not met here for purposes of intervention, and that's wrong, Your Honor. The state – if we go back to the state's motion to intervene, their interest is to maintain the highest possible standards to ensure the purity of the waters of Washington. That is what their purported interest was, and that is their ultimate objective. If the ultimate objective in environmental cases was simply just uphold a federal agency's decision, we would never have a defendant intervener because that's almost inevitably always what's at issue in a case, is a federal agency's decision. Well, I'm going to beg to differ with you, but I don't want to take up all your time, so I've asked my question and I appreciate your answer truly, but I want to hear from both parties. Thank you, Your Honor. Going back to the – basically, the district court found that there were protectable interests, but if you analyze those interests here, those interests informs the impairment and the adequacy of representation. The interest – I'm watching the clock – the interest for the state, as outlined in their motion to intervene, was to maintain the highest purity of the water. That's their interest. That's their ultimate objective. My client's ultimate objective is to stay in business, to maintain sustainable and economical and viable farms and ranches to pass to legacies to come. It is a private interest. But it is threatened here because plaintiff has put their practices at issue and on trial in this case. And we see that specifically in Claim 4 when they're asking for specific measures, a schedule, and an exact date to start. Those are substantive allegations. And if they prevail, it will necessarily require the court to find those plans at issue here as inadequate or nonexistent. So help me understand as a practical matter if Northwest Environmental succeeds on its claims. So you currently – the current status, as I understand, is there is a best management practice program in place and there is federal funding to support compliance with those practices. Is that correct? The funding supports implementation of the practices as well as a number of other programs, educational outreach, cost sharing, technical assistance, et cetera. It's not compliance in a vacuum. So Northwest understands that the EPA's approval, or I guess as NOAA's also approval of the program, the best management practices program was not compliant with the statute. Is that correct? Yes, that it's inadequate for purposes of the Clean Water Act or the Coastal Zone Reauthorization Act, either Section 319 or 306 respectively. Hasn't the federal government's response been to say that in the meantime that the funding is going to continue on a contingent basis? Yes, but the plaintiffs have asked for an indefinite halt of funding in the second amended complaint. So currently the federal funding is contingent on getting the best management practices up to whatever the feds think is adequate. And so Northwest Environmental says this really violates the statute. You have to stop funding until the best management practices are adequate. Is that? Until you have an approvable plan. Which is different than implementation, but an approvable plan. Meaning that the best management practices will be defined as something different than what they are now, I take it? Correct. Okay. They even challenge that they exist or that my clients even use any effective non-point control pollution on the ground measures now. That's page 1112 of their response brief. So let's say Northwest Environmental succeeds on its claims and the district court finds in their favor, and that would mean that the program would be deemed to be inadequate, is that correct? That the program is not approvable? Yes, that the agency's decision was arbitrary and capricious because they approved plans that were not suitable or adequate. And the funding would be? Is it that or is it that the funding was allowed to continue on a contingent basis? It could be both, depending. Okay. I mean, their theory is that the funding is erroneous because the plan was not approvable. Yes, for a multitude of reasons. Yeah. Both on adequacy and existence of proper pollution control. This is what I'm trying to get. I'm not trying to be difficult, but I'm truly trying to understand. One outcome would be that the agency had the ability to continue, had the discretion to continue the funding on a contingent basis. That's what I'm trying to get at. Yes, and I think that the plaintiffs might argue against that. So their claim for relief is that all grant funds have to be withheld. So if they prevail fully on their complaint, then the grant funds would have to be withheld until there's an approvable program.  That's plaintiff's theory. So the question is, if they succeed on their complaint in full, the grant funds would have to be stopped until a program with best management practices that meets some different level than whatever it is now to constitute an approvable plan were adopted. Yes, indefinitely. That's what the remedy is they ask in their complaint. Okay. To me, the district court thought the State of Washington had every incentive that your clients have and more. Maybe not all the knowledge and experience and on-the-ground expertise your clients have, but they had every incentive to defend that your clients have. Can you tell me why he's wrong about that? He's wrong because he assumed the ultimate objective was the same and that the ultimate objective was the same as the federal government's, which was to have the agency decision upheld. If that were true, the state shared an ultimate objective identical to the federal government's, and they likely then curious how they met that standard then. My client's declaration, the declarations make clear that they have private and separate interests. The state's own motion to intervene, which was unchallenged, states that they depend on this funding to maintain the highest possible standards for water purity. That is very different than my client's interests, private and economic interests at state care. Also, my client's interests are narrow. The state references tribes. Respectfully, that's the district court's point, that the state's interest is broader. But I fully appreciate the other part of your argument, and I fully appreciate the expertise and on-the-ground experience. Thank you, Your Honor. Do you want to save time for rebuttal? Yes, I'll save three minutes. I've got just a little bit. Well, actually, I'll take your lead, and I will sit down and save the time. All right. You may have pleased the Court. Brian Toth from the Department of Justice, representing the defendants' appellees. With me at council table is Mr. Paul Kempmeier, representing the plaintiffs' appellees. I'm going to endeavor to use only 12 minutes of my time. So to get to Judge Kristen's question about what the underlying suit is really about and what could happen if the plaintiffs prevail, there are a lot of different hypothetical scenarios that you could spin out as to what would ensue if the plaintiffs win their case. But in large part, the interest of the would-be intervenors is going to be affected contingent on how the state responds to the outcome of the case, not on the outcome of the case itself. So is there anything in the record showing that Washington will swoop in with more funding to prop up the practices of the agricultural rancher interest? No, there's nothing in the record on appeal. So what is it that would cause us to think that Washington would ensure that there wouldn't be this practical impairment of the proposed intervenor's interest? So I think you have to look at the nature of this case, which is a challenge to the funding, not to the adequacy of the programs and whether they can continue under state law. The programs for state best management practices will not themselves be set aside. The state could continue to implement them, albeit with fewer funds. Now, there are declarations in the record post-stating this appeal, and not technically part of the record on appeal, that my friend on the other side cited in the reply brief. And I will address those if the Court would permit. But those are, first of all, outside the record on appeal. And second, if you actually look at the declarations that were submitted, they say that the State of Washington would either seek to recoup funds if, for example, it's ordered to pay back past year funds, or it would seek an additional legislative appropriation. And who would it recoup the funds from? Presumably from third-party subgrantees. From the agricultural interest. So let me go back to this approvable plan issue. And it's always hard to understand what's happening on the ground. But in reading the complaint, there appeared to be the theory of Northwest Environmental seemed to be that the plan was not approvable, that the best management practices were not correct, didn't meet statutory standards, and therefore the EPA had been, had erred or had been arbitrary and capricious in allowing it to be implemented and providing grant funds. Now, from what you were saying is this is solely a matter of grant funds to assist the farmers and ranchers to implement the plans and that the plans could stay in place even if they're deemed to be unapprovable. Help me understand which it is. So the plans themselves might be held to be arbitrary and capricious, or the approval of the plans might be held to be arbitrary and capricious under Federal law. Because they don't meet statutory standards or why? That's the plaintiff's claim, yes. Okay. So if they prevailed then fully, then the plans themselves, the current implementation plans, would be deemed to have not met Federal standards. And therefore I assume they would have to be redone by the EPA. Isn't that correct? Well, we're talking about two different plans. One are the coastal plans, the coastal nonpoint source plans. That's what was conditionally approved. That's the point. They weren't just approved, right? They were conditionally approved. It seems to me the Federal Government has recognized that Washington has to do more. And that's what I'm trying to get at. And if I am misunderstanding this, I really want to be corrected. The Federal Government said these aren't good enough. We're conditionally approving them and continuing the funding, but the State of Washington has to do more. And so if you don't conditionally approve them, if that's no longer on the table, then what happens? So there's the Clean Water Act plan, which was updated. And those updates were approved by EPA. I don't believe those were conditioned. And those are still at issue in the case. Are they being challenged as being inadequate? They're being challenged as inadequate under the Clean Water Act. So if plaintiffs prevail, then those plans also would have to be modified to be more rigorous. Is that correct? Not necessarily. I mean, the program was ‑‑ the original program was submitted back in the late 1980s, and it was approved. Our position is that these updates are, although they're governed by guidance EPA has put out, that they're not subject to the strict requirements in the statute themselves. So you have an argument on the merits, but what if they win is what I'm asking. So if they win, then the plans are not eligible for future funding until they're modified in whatever way the district court says they must be. But do they still meet federal requirements? So in other words, they wouldn't have to be changed. The only thing at stake is funding? Or is there a question about adequacy under the statute and regulations? So the adequacy under the statute was that the plan was, under the Clean Water Act, it was required to be submitted by some date in 1988 or 1989. That's long past. That's our position, that that requirement in the statute is satisfied. But if you lose on that, what happens? So would the state have to then resubmit a new nonpoint source program? That meets current standards. Presumably under the Clean Water Act, under the Coastal Act, which separate the coastal nonpoint source programs, they could simply decline to accept the coastal funding, as Alaska has done, and then they wouldn't be subject to the Act. But they would be subject to the Clean Water Act, of course. Yes, yes. And again, though, I mean, our position – Even in Washington. Right, yes. Again, though, our position is it's a program that was submitted long ago, and although it's been updated and EPA has approved those updates, that those do not trigger the requirement to – I understand that, but that's the merits argument. I'm just wondering what would happen if, in fact, Northwest Environmental won on the merits. Yes. There's a lot in the briefing about the proposed interveners having a dog in the fight and that they would be influenced by the outcome, affected seriously by the outcome, and I do not need to be convinced of that. I get that. I'm trying to figure out how their interests differ, why there's a conflict, if there's a conflict. And the response that I got two or three times is that the state has taken the position that it is interested in the most pristine standard, and her clients aren't. I mean, they have a different interest because, as you said, they want to earn a living. Do you want to speak to this, please? So that statement is based on the language of the state statute. It's a revised code of Washington. It's a section we cited in our briefs. It's 90.48.010. It talks about the state's goal of maintaining the highest possible standards to ensure the purity of all waters in the state consistent with a variety of factors, including industrial development of the state. And then the statute goes on and says, and to that end, require the use of all reasonable methods by industries and others. So there's some capacity in that statute for the state to balance industrial interests with interests in environmental protection. You're not the state, but I would expect if we hear from the state that they would not say we're not interested in high-quality waters for all the people of the state, whereas these agricultural and ranchers have a very specific interest in, as they said, making a living. Right. So is there any basis in the statute or in the declaration for Washington to say, no, our priority is to make sure that we don't drive our ranchers and farmers out of business or make it unduly expensive? I don't see any. I mean, there's another separate statute that talks about particular interests in family farm, irrigation of family farms. But, again, the state is, like the federal government, going to have to balance those interests. And I take my friend's point that they have a more direct interest in the economics of their own property and their businesses. The point, though, is that in other cases that hasn't been shown enough by itself, this knowledge of the specialized impacts. Right, and that's what I'm trying to get at. Why not? They have certainly unique experience and on-the-ground knowledge, and I don't need to be convinced that this would be an important outcome for them. So why hasn't it been found to be enough in other cases? Well, I think it's not an essential element to the proceedings here. They haven't shown that it's an essential element to demonstrate the specialized impacts to their property. Is that because of the district court's finding that the state's interest subsumes their interest? I think it's the nature of the claims at issue. I mean, these are challenges to federal approvals of the programs and whether they comply with the requirements of the federal statute. And there's nothing in the statute that talks specifically about the economic impacts to the property owners being a factor. So how about cases like Forest Conservation Council and others where we said the party with a narrow parochial interest does have a separate interest from the government? I think there it was the state of Arizona had a different interest than the federal defendants. How do you distinguish that in this case? Because it seems to fall specifically within that language, a narrow parochial interest. So, I mean, these cases, as you know, the law on intervention is very fluid and very case-specific, and I would point to here the presence of the state in the case as the intervener, which I don't believe was relied on for adequacy of representation in the Forest Conservation Council case, and to also say that this is a unique case and that the main impacts they are alleging that they would suffer would be a result of how the state responds to an order withholding funds. If the state is going to be able to obtain, for example, additional legislative funds, and we just don't know that to say at this point, then they might not be harmed at all. So I think you said there was nothing in the record to that effect. No, that's right. So it's just speculation. No, it is speculation, but there is a burden that's on them once this presumption of adequacy arises, and so we would say that the burden is upon them to show that there would be a differentiated interest. And I have read their declarations. I'm not trying to denigrate their interests in any way. But, you know, this is one of those cases where you have on both sides of the granting equation government entities representing the grant funder or the federal government and the recipients of the grants of the state. Now, the state does spend some of this money not just passing it along, but on its own technical staff and expertise and all of that. So they have unique interests in that respect. But otherwise, you know, they are in the position of wanting to see these funds used for the projects of the same type that my friend for the would-be intervenors would advocate for. And I would just finally note that, you know, the would-be intervenors are not alone in being sub-grantees of the state's money. So you have to consider that other types of entities like Indian tribes, municipalities, and other types of interested industry organizations, potentially forestry associations, would also be similarly situated in that they receive these types of grants. And that there's no limiting principle that my friend has offered to say why they wouldn't also be intervenors of right. I mean, subject to the district court's ability to manage the proceedings and maintain efficiency. But, you know, by and large... But that's not, that issue isn't at issue here, right? Right. Because they haven't asked to intervene. Right. So I'm not suggesting the sky will fall if we lose this appeal. It's hard to know what the limiting principle would be. Where would it end? Yes. For me, that is one of the things I struggle with. And I don't, is there a case law we should look to? I mean, the case, you know, there was this categorical rule about NEPA defendants a few years ago that the court on bond can validate. And so it's hard to see anything other than a case-by-case approach and a careful examination of the record. We haven't, the federal government, you know, in the past decade or so has not always, you know, opposed these types of intervention motions. But there's been a renewed effort to take a more careful record-based look at each case and to see whether the interests of the would-be intervenors are truly ones that ought to entitle it to be a party of right in the case. So I'll leave the remainder of my time for my friend for the plaintiff's appellees. Good morning, Your Honors. Paul Kampmeyer for Plaintiff Appellee Northwest Environmental Advocates. I had two quick points I want to make, but I'd like to address this question about what happens if advocates wins its claims and why does that matter for purposes of intervention. I'm also happy to answer a question about the claims if you have any. But in my view, if plaintiff wins its claims that the approvals of Washington's non-point programs are invalid under federal law, the first thing that would result in is a declaration of invalidity, not necessarily vacature, not necessarily an injunction. And so much depends on what plaintiff decides to pursue in terms of its relief if it establishes liability. So your prayer for relief was to just withhold all grant funds until there's an approved plan. That was the prayer for relief. So that's part of the prayer for relief. So you're saying they can leave the inadequate program in place indefinitely so long as they don't get funding. Is that correct? I think it's not entirely correct. I think if plaintiff prevails on Claim 4, which is a challenge to EPA's approval of Washington's non-point program, then Judge Kuhnhauer could declare that approval invalid. There's case law around whether he should then go ahead and vacate or not. Plaintiff may or may not seek vacature. But if you win, then the plan, in effect, is determined to be inadequate under the statute. That's my understanding. Correct. So the EPA and the state of Washington could say, well, that's okay. We don't mind violating federal law. But does that seem very likely? It's unlikely, and I think courts presume that state and federal agencies will follow a declaration of what the law is once the court decides that. So there would need to be, presumably, some effort to get into compliance. What can you tell me would happen as a result of the declaration of inadequacy? If that happened, if they're deemed out of compliance, do we know that the funding stops? We don't know that the funding stops because, in my view, under Section 319H1, EPA is only allowed to give 319 money to states with an approved plan. If the approved plan is declared invalid but not vacated and left in place pending a revision, which we could, we think, force under 319D2, then, arguably, the money could continue flowing to the state of Washington. That would be counterintuitive for her, though. Plaintiffs might also take a different approach and say, hey, in fact, we need to incentivize these changes, and so EPA, you need to withhold the money. So what do we do about the fact that we don't know what would happen? And, in fact, this is why I asked the question. It has already been deemed, I think, inadequate. The funding is conditionally improved, is my understanding. It has to be improved. Their plans has to be improved, and the funding is just conditional. So I'm trying to figure out how do we know, when do we know the funding would stop? And do you have an answer to that question? I don't think we know. There's – pardon me, and I'm over my time, but I want to answer your question. Okay. I don't think we know whether a plaintiff is going to win on liability, because we haven't gotten that far at the district court. But just pretend they do for a minute. Then what happens? Because that's what they're worried about. Okay? And then what happens? I don't think we know, because we haven't gone through the process of asking the judge to grant relief. Your prayer for relief says you want the funding to stop. So that's what you put out in your complaint. I suppose the Northwest Environmental could change its mind, but that's what it asks for in the complaint. Right. So to answer that question, and, again, we're not done with the district court proceedings, Judge Kuhnhauer has said that with respect to claims two and three, which we call the Cesara claims, the plaintiff does not have standing to seek to have the federal government withhold money from the state of Washington, because that doesn't redress injuries to advocates or its members, because it potentially actually harms implementation of non-point source programs and anti-pollution efforts. Now, we disagree with that. We're going to continue to litigate that issue at the district court. But if Judge Kuhnhauer stands by that, he may very well find that plaintiff doesn't have standing to get EPA to withhold money from the state of Washington. So that would mean declaratory relief or vacature or something else. There's also an Endangered Species Act relief. My last push, standing is not at issue in this case before this court. It is still at issue below, so we would ask the court not to address that issue. Thank you. Thank you. We have some time. Thank you. Sort of seeing how this conversation is unfolding, I want to stress that this is not only about funding. It is about the adequacy of the plans, which addresses BMPs, schedules, programs, and plaintiff is not hiding the ball about this. It is not just about funding. The second piece of the conversation unfolding is what would happen if and what would happen if. And Mr. Toth, in his brief, identifies, well, they may be impaired if the state has to claw back and get money. But they're not going to be impaired maybe because the district court may not get there or the claims may be dismissed. But the standard for intervention is not retrospectively. In fact, FRCP 24A requires a timely motion without undue cause and delay. So that means an applicant intervener can't wait for the case to be resolved and then decide if we may be impaired. We don't wait for impairment to actually happen. Rule 24A says timely intervention. So if it may be impaired, which is what the Supreme Court precedent says, Trubovich, then that's sufficient. It is not just we would argue that there's a minimal burden in May for both of them based on different cases. I would rely on Berg for adequacy as well. So it's not disqualifying for if just because an opposing party to an applicant can identify one or two or multiple scenarios where an applicant may not be impaired, it doesn't trump the admitted may be impaired that's already obvious from the briefs and obvious from plaintiff's brief. May be impaired is the standard. Under Wilderness Society in an en banc decision in 2011, this circuit abandoned the none but for federal defendant rule. It abandoned and corrected the restrictions of limiting intervention to private parties until the remedy phase. And if we buy Mr. Toth's theory today, then a defendant intervener could never intervene until the case is resolved, and that's too late. I think your point is well taken. Can I get your response to my question about where would it end? There's a lot of different interests potentially in some of these. It's easy to imagine federal funding impacting lots of different user groups or stakeholders. What would you say about that? Where would the case end on remedy? No, where would the case end on intervention? In other words, we end up with 50 different parties knocking at the court to say we want to intervene. As a matter of right. Well, that's a good question. Here, the parties agreed to follow the schedule, and I don't think that efficiency and judicial efficiency is an issue here given that. But I don't think there's a clear answer on that as to where it ends if parties keep coming along. But I think on a timeliness factor, which is not an issue here, that would eventually resolve it based on timeliness. I appreciate your candor. It's something I'm struggling with. Thank you. But this issue on the state, and this issue, the state's adequacy of representation was not briefed at the district court. It came for the first time on appeal because the federal defendants did not make that argument at the district court level, in part maybe because the state and my clients moved on the same day to intervene. But it raises the question, query, whether had the farmers and ranchers been granted intervention first, whether it would be clear that we had the same interests as the state and adequately represented it. The district court's view was that the state's interest is much broader, and surely it is. It is broader. Yeah. My clients seek only to advance and protect their interests without sort of reconciling competing priorities. If I may end on just one quote from Wilderness Society, we urge the court not to turn back the clock on intervention because the reality is that in cases like these, they frequently pit private, state, and federal interests against each other. Rigid rules in such cases contravene a major premise of intervention, the protection of third parties affected by the pending litigation. Thank you for your consideration and time. Okay. We thank both parties for their argument. And the case of Northwest Environmental Advocates versus the United States and Washington Cattlemen's Association and State Farm Bureau Federation is submitted, and we're adjourned for this session.
judges: Ikuta, Christen, Choe-Groves